ANNA M. HERWEHE, Appellant, v. LEWIS F. SCHULTZ et al., Appellees.

**FRAUD: Inadequacy of Price.** Principle reaffirmed that fraud will not be presumed from facts which are fairly consistent with honesty and good faith. So held where the sale was at a price which was, *arguendo*, $50 under the actual value.

*Appeal from Jasper District Court.*—D. W. HAMILTON, Judge.

SEPTEMBER 30, 1921.

SUIT in equity to set aside and cancel contract for sale of land. Prayer of petition denied, and cross-petition of the defendant Carpenter for specific performance of the contract sustained. The plaintiff appeals.—*Affirmed.*

*Campbell & Campbell,* for appellant.

*Hammer & Tripp,* for appellees.

WEAVER, J.—In March, 1919, the plaintiff, as the only child and heir at law of Jacob Herwehe, deceased, acquired title to a farm of 75 acres in Jasper County, Iowa. In May of the same year, plaintiff entered into a written contract to sell said land to the defendant Frank Carpenter at the agreed price of $200 per acre, payable $100 down on the signing of the agreement, and the remainder in specified installments, beginning March 1, 1920. The writing was executed on March 20, 1919, at which time Carpenter delivered to plaintiff his check for $100. Shortly

afterward, this suit was begun by the plaintiff to set aside the contract, on the ground that she had been imposed upon by the fraud and collusion of Carpenter and his codefendant Schultz, and thereby induced to make said contract of sale at much less than its actual market value. The nature of the alleged fraud may be stated as follows: Jacob Herwehe died, about March 20, 1919. Plaintiff, his daughter, was then about 48 years of age. She had always lived with her father, and was unaccustomed to business dealings. Very soon after the death of Herwehe, the defendant Schultz was appointed administrator of his estate, and plaintiff claims that he suggested to her the advisability of selling the land, and volunteered to find her a purchaser. She testifies that Schultz told her that the property was, in some respects, in bad condition, and was worth not to exceed $200, and later reported to her that Carpenter would buy the property at that figure; and that, having confidence in Schultz, as a friend and as administrator of her father's estate, and believing and relying upon his representations, she consented to the sale, and executed the contract. She avers that, in truth and in fact, the land, as Schultz well knew, was then fairly worth $250 or more per acre; that Schultz had offers and opportunities to find purchasers other than Carpenter, ready, able, and willing to buy the land at a price materially greater than $200 per acre, but refused or avoided them, in the interest of Carpenter, with whom he colluded to obtain the land at less than it was reasonably worth. She seems to say, though not in express terms, that she was led by Schultz to believe that the sale was being made by him as administrator, and that he alone was authorized to deal with the purchaser; and that, so believing, and having the utmost confidence in him that he would protect her interest and get the best obtainable price for the property, she followed his advice and counsel, and assented to the sale.

The defendants deny all of plaintiff's allegations of collusion and fraud, and allege that the sale was made to Carpenter in good faith, and at a reasonable price. Schultz concedes that he took part in procuring the sale, but alleges that his participation therein was disinterested, without compensation or profit to himself, and with the sole purpose of rendering the plaintiff friendly assistance.

The trial court found that plaintiff's charges of fraud and imposition were not established by the evidence, dismissed her petition, and decreed specific performance of the contract.

As will be seen, the issue is one of fact. That plaintiff did make and execute the contract to Carpenter is conceded. To be entitled to a vacation or annulment of such agreement, the burden is upon her to show that it was obtained by fraud, as alleged in her petition. Fraud is not to be inferred or presumed from facts which are fairly consistent with honesty and good faith. While the proof need not be beyond a reasonable doubt, it must be such as reasonably convinces the impartial mind of the truth of the charge. It must not be left to rest on a mere suspicion, but must be found as an established fact. The trial court found that the case made by plaintiff did not measure up to this standard, and with that conclusion we are disposed to agree. Plaintiff does not claim that she was misled into a contract or sale which she did not intend to make. The gravamen of her complaint is not that she did not wish to sell or intend to sell, but rather that she was induced to sell for less than her land was worth. If it were clearly established that the price agreed to be paid was grossly inadequate, it would be a circumstance of material weight, in support of the charge that she was defrauded; but the showing actually made falls short of this measure. The sale was made at $200 per acre. Plaintiff's witnesses estimate the value of the land at the date of the contract at $250 or more per acre, while the witnesses on behalf of the defendants unite in fixing such value at $200 per acre. It is a matter of common knowledge that, at the date in question, the real estate market for farm lands in Iowa was in a fevered condition, and that prices demanded and prices offered fluctuated according to the individual confidence in the permanence of the then prevailing "boom;" and variations of $50 an acre within a very short time in successive sales of the same land were by no means unknown or uncommon. The mere fact that a purchaser buys land at less than its full market value is no evidence of fraud. The ordinary inducement to purchase is the belief of the purchaser that there is a margin of profit for him in the transaction, and this involves neither legal nor moral wrong. It is only when the inadequacy of the price is so great or so

evident as to fairly suggest that the seller has been overreached or imposed upon that it may be treated as evidence of fraud. But even if we were to adopt the plaintiff's figures, and to say that a purchaser might have been found at $250 an acre, it would not follow therefrom that a contract to sell at $200 an acre is tainted with fraud. It appears that, after obtaining this contract, Carpenter relisted the land with agents for sale at $250 an acre, but there is no evidence that he found a buyer on such terms. Assuming, then, as we must, that the price agreed to be paid is not so inadequate as to justify a finding of fraud, there is little left in the record to call for equitable interference by the court in plaintiff's behalf. The most which can be said is that there is room for the inference or suspicion that Schultz did favor Carpenter, as against other possible buyers; but there is no evidence of any direct, tangible offer of a better price from any purchaser ready, able, and willing to buy at a materially higher price. Certain witnesses do say that they would have welcomed the opportunity to bid on the property, or would have paid more than $200 an acre; but the substance of the showing is not so much that Schultz rejected any definite offer of a better price, but rather that, with proper effort, he could have procured a price in excess of the one named in the contract. There is no sufficient evidence that Schultz, as administrator, improperly assumed to control the plaintiff's land or the sale thereof; but it is not denied that he did offer and undertake to assist her in making a sale, without payment or charge for his services. In so doing, even though acting gratuitously, he was bound to deal with her and her property in good faith. He was not bound to go out and search for the highest and best bidder for the property, but he was bound to report to her the best bid obtained from any responsible buyer, and not to make use of his position as her friend and adviser, to induce a sale of the land for a price lower than he knew it would reasonably command. If, however, as between purchasers proposing to buy on substantially like terms, he recommended and induced the sale to Carpenter, this would be a matter of which plaintiff could not justly complain.

Without extending this opinion for a statement or discussion of the testimony in detail, we hold that, under the rules

above mentioned, the plaintiff failed to sustain the burden of proof of the fraud alleged to have been practiced upon her, and the decree as entered by the trial court must be, and it is,— *Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.